### HILDRETH v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. MUNICIPAL CORPORATIONS—EMPLOYMENT OF ENGINEER BY STREET COMMISSIONER.

Laws 1896, p. 76, c. 57, § 1, as amended by Laws 1897, p. 925, c. 679, imposing on a commissioner of street improvements the duty to lay out and establish an entrance to a boulevard, and directing him to cause to be made three maps showing the location, width, course, windings, and grades thereof, does not authorize him to employ an engineer to make plans and specifications for such an approach.

2. SAME—AUTHORIZATION OF PUBLIC IMPROVEMENT.

The resolution of the board of public improvements, pursuant to New York City Charter, Laws 1897, p. 159, c. 378, § 455, authorizing the commissioner of highways to appoint a consulting engineer on the work of constructing an approach to a bridge, is not an authorization and approval of the construction of the approach, required by section 413 (page 145).

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 808.]

3. SAME—SALARY OF CONSULTING ENGINEER.

A contract by the commissioner of highways with an engineer to make plans, at his own expense, for an approach to a bridge, he to receive, as his compensation, a per cent. of the cost of the work of constructing the approach, is not the appointment of a consulting engineer, authorized by a resolution of the board of public improvements, under New York City Charter, Laws 1897, p. 159, c. 378, § 455, nor the fixing of the salary of the consulting engineer, within section 456, so that, the plans not having been used, the city is not liable to the engineer for the making of the plans.

Appeal from Trial Term, New York County.

Action by Percy S. Hildreth against the city of New York. From a judgment entered on dismissal of the complaint on a trial before a jury, plaintiff appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

L. Laflin Kellogg, for appellant.

Theodore Connoly, for respondent.

INGRAHAM, J. By chapter 57, p. 76, of the Laws of 1896, the commissioner of street improvements of the Twenty-Third and Twenty-Fourth Wards of the city of New York was directed, within one month after the passage of the act, to lay out and establish an approach and entrance to the Grand Boulevard and Concourse in the city of New York. The act then specified the real property upon which this approach was to be constructed, and provided:

"And the said commissioner of street improvements shall cause to be made three similar maps or plans or profiles of the said approach and entrance to the Grand Boulevard and Concourse, so to be laid out as aforesaid, showing the location, width, course, windings and grades of such approach and entrance to the Grand Boulevard and Concourse, which maps, plans and profiles shall be certified to by the said commissioner of street improvements" and filed as in the act provided.

The act then provided for the condemnation of the property to be taken for such improvements. Nothing seems to have been done under that act during the year 1896, and by chapter 679, p. 925, of the Laws

of 1897, section 1 of the act was amended. The section as amended, after describing the property to be taken, provided:

"And the said commissioner of street improvements shall cause to be made three similar maps or plans or profiles of the said approach and entrance to the Grand Boulevard and Concourse, so to be laid out as aforesaid, showing the location, width, course, windings and grades of such approach and entrance to the Grand Boulevard and Concourse, which maps, plans and profiles shall be certified to by the said commissioner of street improvements" and filed as therein provided.

After this act was passed, and before the commissioner acted under it, the new charter of the city of New York (chapter 378 of the Laws of 1897) went into effect. By section 526 (page 184) of the charter the office of commissioner of street improvements of the Twenty-Third and Twenty-Fourth Wards was abolished, and all his powers, privileges, and duties devolved upon the commissioner of highways in the city of New York, to be exercised and performed by him according to the provisions of the act. Section 455 (page 159) of the charter provides that:

"The commissioner of water supply, the commissioner of highways, and the commissioner of sewers, shall each appoint, without definite term, when thereto authorized by the board of public improvements, a consulting engineer to their respective departments, who shall be an expert in all matters relating to the work performed by the department in which he is appointed and who shall have had at least fifteen years experience as a civil engineer."

By section 456 (page 160) the commissioner at the head of each of these departments was given power to appoint clerks and subordinates and to fix and regulate their salaries within the limits of the appropriation duly made therefor; and by section 457 the commissioner at the head of each of the said departments was required to prepare and execute all contracts authorized by the board of public improvements, or by said board and the municipal assembly for his department, and to "make and cause to be made all surveys, maps, plans, estimates and drawings of all work relating to his department."

Nothing seems to have been done in relation to this work until the 7th of November, 1901. On that day the board of public improvements passed a resolution:

"That in pursuance of section 455 of the Greater New York charter, authority be and is hereby granted to the commissioner of highways to appoint a consulting engineer on the work of constructing an approach to the Central Bridge (One Hundred and Fifty-Fifth street) to the junction with the Grand Boulevard and Concourse at East One Hundred and Sixty-First street, in the borough of the Bronx."

On the 12th day of November, 1901, the commissioner wrote a letter to the plaintiff as follows:

"Dear Sir: In accordance with resolution as passed by the board of public improvements at the meeting of said board held on Wednesday, November 6th, and pursuant to section 455 of the Greater New York charter, and the provisions of sections 1 and 2 of chapter 57 of the Laws of 1896, as amended by chapter 679 of the Laws of 1897, you are hereby appointed consulting engineer in the matter of the laying out, establishing, and constructing an approach and entrance to the Grand Boulevard and Concourse from the Central Bridge (155th street) to the junction of said approach with the Grand Boulevard and Concourse at or near 161st street, borough of the Bronx. As consulting engineer you will furnish your own services and make, at your own expense, all

the necessary plans, both in general and detail, for retaining walls, slopes, embankments, substructures, masonry, steel work and all other work of whatsoever nature necessary in the construction of approach, from Central Bridge to the Grand Boulevard and Concourse, as stated above, together with the drawing up for approval of all necessary specifications, contracts, etc. You will report to Mr. Josiah A. Briggs, chief engineer, department of highways, borough of the Bronx, from whom you will receive the necessary instructions for your guidance. For the furnishing of above services you will be paid five (5) per centum of the cost of the work, payable as follows: Two (2) per cent. on the estimated cost of the work, payable when specifications and preliminary general plans and details have been drawn up and approved by the commissioner of highways. Three (3) per cent. on the actual cost of the work payable from time to time during the progress of same and in accordance with amounts returned on payments as due contractor.

"Respectfully, James P. Keating, Commissioner of Highways."

Upon the receipt of this communication, the plaintiff at once reported to the chief engineer in the department, and by the end of December he had prepared the plans for the construction of the approach, which were submitted to the commissioner of highways and approved by him on the 26th day of December, 1901. He claims to recover the compensation of 2 per cent. upon the estimated cost of this work, such cost being estimated in three aspects: First, as a safe maximum cost, $662,500; second, as a reasonable cost likely to be met, based on quantities in estimate, $490,800; third, as a possible minimum cost, $420,000. So far as appears, this was the last that had been heard of this construction. The plans were never used by the city, and the city obtained no possible benefit from the belated activity of the commissioner and the celerity with which the plaintiff made the plans and specifications and drawings necessary for this important work. At the end of the case the court directed a verdict for the defendant.

The plaintiff seeks to establish his right to recover, claiming that under the act of 1896, as amended by the act of 1897, there was an implied authority of the commissioner of highways to construct this approach and to make such contracts as were necessary to carry out the intention of the Legislature, and that to enable him to construct such an approach the assistance of an architect or engineer was necessary. I do not think that this position can be sustained. The duty imposed upon the commissioner of street improvements for the Twenty-Third and Twenty-Fourth Wards of the city of New York was to lay and establish an approach and entrance to the Grand Boulevard and Concourse in the city of New York, and he was directed to cause to be made three maps, plans, or profiles of such approach and entrance, showing the location, width, course, windings, and grades thereof. There was nothing in this act which expressly authorized the commissioner to construct a masonry and iron viaduct or structure at the expense of the city of New York of between $400,000 and $700,000. Nor did the direction contained in the act require him to employ an architect to make plans for the structure. When the power or duty imposed upon this commissioner of street improvements was transferred to the commissioner of highways of the city of New York, he was then required to perform the duties imposed upon him in accordance with the charter of the city; and certainly under the charter the commissioner of highways was not authorized to construct this approach or to procure plans and specifications and contracts for its construction.

Section 413 (page 145) of the charter provides that:

"Any public work or improvement within the cognizance and control of any one or more of the departments of the commissioners who constitute the board of public improvements, that may be subject of a contract, must first be duly authorized and approved by a resolution of the board of public improvements and an ordinance or resolution of the municipal assembly. But no public work or improvement, involving an assessment for benefit, shall be so authorized until there has been presented to the board of public improvements an estimate in writing, in such detail as the board may direct, of the cost of the proposed work or improvement, and a statement of the assessed value, according to the last preceding tax roll, of the real estate included within the probable area of assessment."

It is not alleged that this section was complied with. Before any contract could be made in relation to this improvement, the improvement must first be duly authorized and approved by a resolution of the board of public improvements and an ordinance or resolution of the municipal assembly, and this improvement, as such, was never authorized. The resolution of the board of public improvements which, in pursuance of section 455 of the charter, gave authority to the commissioner of highways to appoint a consulting engineer of the work of constructing an approach to the Central Bridge, was not an authorization and approval of the public work or improvement required by section 413 of the charter, and there is no evidence that the municipal assembly acted upon the question at all. This resolution, however, was simply to authorize the commissioner to appoint a consulting engineer, who would be a subordinate in his department. It gave no right to make a special contract with him for his compensation, except so far as the commissioner was authorized to fix his salary, which must be within the appropriation for his department, as to which there is no evidence. It seems to me that the act of 1896, as amended by the act of 1897, contained no authority for the commissioner to take any action in relation to the construction of the approach, and that the duties strictly imposed upon him by the act simply had relation to laying out the approach and making the necessary plans, so that proceeding might be taken by the city to acquire the property necessary therefor.

The plaintiff also insists that this contract was authorized by section 455 of the charter, which permits the commissioner of public highways, when authorized by the board of public improvements, to appoint a consulting engineer to the department; but this alleged contract under which the plaintiff claims does not make the plaintiff a consulting engineer of the department. The plaintiff was appointed consulting engineer in the matter of laying out, establishing, and constructing an approach and entrance to the Grand Boulevard and Concourse, and as such he was required to furnish his own services and to make at his own expense "all the necessary plans, both in general and detail, for retaining walls, slopes, embankments, substructures, masonry, steel work, and all other work of whatsoever nature necessary in the construction of approach from Central Bridge to the Grand Boulevard and Concourse, as stated above, together with the drawing up for approval of all necessary specifications, contracts," etc.; and for the furnishing of such services he was to be paid 5 per cent. of

the cost of the work. The appointment of a consulting engineer was entirely distinct from this employment to furnish, at his own expense, these plans and specifications and contracts for an improvement, which had not been authorized as required by the charter, and for which no plans were necessary, as, so far as appears, even the title to the property had not been acquired. Assuming that the commissioner had power to appoint the plaintiff as consulting engineer in his department, there was no power to make a contract with him as such consulting engineer to furnish plans and specifications and contracts for the construction of a work not authorized. Such a contract was not fixing the salary of a consulting engineer within the provisions of the charter. No plans, specifications, and contracts for the construction of the approach were required until the improvement was authorized by the proper municipal authorities. The preparation of the plans, specifications, and contract was a part of the work of constructing the approach, and authority to appoint a consulting engineer gave the commissioner no authority to make a contract for the preparation of plans, specifications, and contract for an improvement not legally authorized by the proper municipal authorities.

An entirely different question would be presented if, after these plans and specifications had been furnished under such a contract, proper proceedings had been taken by which this structure had been authorized, and plans, specifications, and contract made by the plaintiff had been accepted and used by the city, and the approach constructed under it; but, in the absence of any such evidence, there was no legal obligation on the part of the city to pay for the services rendered by the plaintiff.

I think, therefore, that the judgment appealed from should be affirmed, with costs. All concur.